UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WESLEY D. PIERCE | CIVIL ACTION |
| VERSUS | NO. 21-1262 |
| JONATHAN PORTER, ET AL. | SECTION "M" (2) |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Wesley D. Pierce filed this prisoner civil rights complaint pursuant to 42 U.S.C. § 1983 (ECF No. 4) which was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2).  Also before the court are a Motion to Dismiss and/or for Summary Judgment (ECF No. 28) filed by defendant Dr. Jose Ham on November 9, 2021, to which Pierce filed an opposition (ECF No. 37).  Pierce also filed a Motion for Temporary Restraining Order to prevent his transfer and interference with his criminal proceedings.  ECF No. 25.

Having considered the record, including plaintiff's complaint, his § 1983 fact statement, *Spears* hearing testimony, and the applicable law, the undersigned enters the following findings and recommendations.

## I.    <u>BACKGROUND</u>

Pierce was a pretrial detainee in the St. Tammany Parish Jail ("STPJ") when he filed his *pro se* prisoner civil rights suit under 42 U.S.C. § 1983.  ECF No. 3, at ¶III(A), at 3.  He has since been released.  ECF No. 39.  Pierce alleged several claims categorized as sexual assault, failure to protect, failure to investigate his complaints, and excessive force against defendants Dr. Ham,

Captain Lacey Kelly, Sheriff Randy Smith, Deputy Warren Farrell, Captain Shaniqueka Weary, and Jonathan Porter. Through his *Spears* hearing testimony summarized in this report, Pierce has included additional claims arising from the alleged conduct of STPJ officials Lt. Chatelain, Deputy Johnathan Lott, Sergeant Harris, Corporal Glover, Deputy Racheal Smith, Corporal Pelligrin, and Sergeant John Doe. As relief, Pierce requests a trial, compensation of $3.5 million, a lifetime of healthcare, and protection from retaliation. *Id*., ¶V, at 5.

A.    <u>Factual Allegations in the Complaint (ECF No. 3)</u>

Pierce alleged that, in February or March of 2020, defendant Porter was his mental health counselor at the jail. ECF No. 3, Claim 1, at 6. During a counseling session, Porter asked to see Pierce's penis. Pierce declined and tried to use the PREA hotline at the jail to report the incident, but the number was disconnected. Pierce had his girlfriend, Alexis Perry, call the jail to report the incident to Dr. Ham, but she had to leave a message with the administrative office. After the call, Pierce was immediately brought to Porter's office where he also spoke with Dr. Ham. Pierce claimed that he was required to continue seeing Porter, who would video Pierce doing sexual acts. On two occasions, Deputy Farrell allowed Porter to close the office door during a session with Pierce, and Porter performed oral sex on Pierce behind the closed door.

Pierce also claimed that he was released from jail at some point and returned home. *Id*., Claim 2, at 6. During that time, Porter contacted him through social media on the pretense of helping him get his life back together. Porter soon began to offer Pierce drugs and gambling money in return for sex. When Pierce refused, Porter "assaulted" him. Pierce claimed that he reported the incident to the Sheriff's Office and was told to report it to the jail. He claimed that he went to the jail but he was not allowed to see the warden. Pierce then called Captain Weary, who

instructed him to make a report.  Pierce claimed that he filed every report he could, but they were either ignored or his words were twisted around.

Pierce further claimed that, on December 8, 2020, while housed in the jail, he was forced to sit for hours while handcuffed to an iron bench and soaked in his own urine.  *Id*., Claim 3, at 7. He also claimed that, on May 13, 2021, while in the jail, he was physically assaulted by officers with use of excessive force and cruel and unusual punishment.

**B.**    **Reply to the Court's § 1983 Response Order (ECF No. 16)**

Pierce reiterated most of the allegations in his Compliant.  He stated that Porter had been his mental health counselor at the STPJ since 2017.  ECF No. 16, at 1.  In February or March of 2020, Porter began making sexual comments to Pierce.  Pierce tried to report that conduct on the PREA report line through the jail's phone system, but it was disconnected.  He then had his friend, Alexis Perry, make calls to the jail.  He was taken immediately to Porter's office.  Porter offered to get Pierce in to a welding class and give him two cans of smokeless tobacco dip per week if Pierce would tell Dr. Ham that the reported allegation was a mistake.  Pierce admittedly agreed, and Porter made the call to get him into the welding class, a program that did not start because of COVID.  Porter then called Dr. Ham to his office for Pierce to tell Dr. Ham that the report was a mistake.

Pierce claimed that, after that incident and through Porter's last day working at the jail, Porter had Pierce perform sexual acts.  On two occasions, Deputy Farrell let Porter close the office door which was against jail policy.  While the door was closed, Porter would have Pierce record him performing oral sex on Pierce.

On another occasion, Porter told Pierce to go on suicide watch because Dr. Ham thought Pierce was seeing Porter too often. Porter had Pierce placed in segregation cell five where the guards could not see Porter stand at the door to watch Pierce masturbate. *Id*. at 2. Porter would also watch Pierce masturbate during his counseling sessions, which Porter recorded on his phone.

Pierce indicated that when he returned to jail, Porter no longer worked at the jail, so he renewed his complaints to the jail officials about the incidents. He claimed that this is when he began to be harassed, abused, put in danger, and had his rights violated by jail officials. As examples, he claimed that on December 7, 2020, he was on COVID-19 quarantine when an inmate served him food without wearing gloves or a mask. On December 8, 2020, Sergeant Robin handcuffed Pierce to a bench where he remained while soaked in urine because he was not allowed to go the bathroom. While Pierce sat there, his personal belongings were stolen by security officers. He filed a grievance complaint about the incident, but it was ignored. He did not receive a response to the grievance until he was already released and at home. He further claimed that Lt. Chatelain lied in the response.

Pierce also alleged that on May 20, 2021, Deputy Johnathan Lott ignored his due process rights and continued to do so. Pierce provided no facts or explanation for this statement.

He further alleged that, on July 9, 2021, after this suit was filed, Sergeant Harris and Corporal Glover placed him in a dorm, watched from "the Pod" as he was assaulted, and then they left the area. He claimed that he has been threatened and harassed on several other occasions by jail investigators Deputy Racheal Smith, Corporal Pelligrin, and Sergeant John Doe.

4

C.    *Spears* **Hearing Testimony**

On December 8, 2021, I conducted a telephone conference with Pierce and counsel for the defendants participating in the conference call.  ECF No. 36.  Plaintiff was sworn and testified for all purposes permitted by *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), *overruled on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989), and its progeny.  The conference was electronically recorded.

During the hearing, Pierce explained that he was in the STPJ after his arrest for a parole violation in December 2019 through his release in October 2020.  He remained out of jail until he had another arrest on November 16, 2020.  He posted bond on January 5, 2021, and remained out until he was arrested again on March 7, 2021.

Pierce testified that defendant Porter was his mental health counselor at the jail while he was incarcerated between December 2019 and October 2020.  As far as he knew, Porter was employed by an outside company and worked at the jail as the mental health director.  Porter had an office at the jail and was present at the jail daily until he was fired in 2020.  Porter was not working in the jail when Pierce went back to jail in November 2020.

Pierce explained that, before COVID protocols were in place, Porter made sexual comments to him.  Pierce had his girlfriend report this to the jail.  Pierce stated that between December 2019 and October 2020, he saw Porter weekly.  At some point, Porter began to have him perform sexual acts at each visit.  Pierce stated that, on one occasion in Porter's office, Porter performed oral sex on him and had Pierce record it on a phone.  Pierce recalled that, after another inmate attempted suicide at the jail, Dr. Ham told Porter that he was seeing Pierce too often.  Porter then had Pierce put on suicide watch.  While in cell five of the suicide watch area, Porter on two

5

occasions would look through the hatch hole in the door of cell five to watch Pierce masturbate. Pierce claimed he did this at Porter's request, because watching him masturbate was Porter's favorite sexual activity.

Pierce also testified that Dr. Ham was the head doctor over the medical department, and he believe him to be Porter's boss. Pierce stated that he sued Dr. Ham because his girlfriend spoke to Dr. Ham about Porter's sexual comments and nothing was done. He claimed that the jail officials, including Dr. Ham, did not send investigators. Instead, after the complaint was made, Dr. Ham or someone had him sent to Porter's office. While there, Porter offered him a spot in a welding program if he would tell Dr. Ham that the complaints were not true. Pierce accepted the offer and Porter called to have him put in the class. Pierce claimed that Porter then called Dr. Ham to his office so that Pierce could tell him that the complaint was a misunderstanding. After that, Dr. Ham made no reports about the incident.

Pierce testified that Captain Kelly was the acting warden during the time of the incidents and when he later reported them to the jail. Pierce stated that he did not have any interactions or speak with her about the sexual assaults. Pierce indicated that he included Captain Kelly as a defendant because she was the head of the facility, and he was not sure who to name in the suit. He stated that Captain Kelly had no role in this and did nothing to him.

Similarly, Pierce stated that he sued Sheriff Smith even though he had no contact with the Sheriff. Pierce testified that, after completing the final step of the grievance process, he wrote two letters to the Sheriff complaining about the harassment at the jail. He stated that he was told that the Sheriff received his letters, but he never heard back. Pierce explained that his grievances and his pending TRO motion were related to incidents of harassment at the jail. Specifically, he stated

that on one occasion, deputies pulled him out of his cell and told him to stop filing grievance complaints.  As an example of his complaints, he stated that his grievances involved one occasion when he received three envelopes from this court, which a deputy opened and then handed to another inmate to bring to him.  Pierce claimed that, because he filed so many grievances, the prison officials had him transferred to a dangerous prison in Tallulah, Louisiana after Hurricane Ida.[1]  He also complained that the grievance officers consistently pulled the wrong video tape to avoid proving his complaints.  Nevertheless, Pierce conceded that he had no contact with Sheriff Smith other than the two letters he wrote to the Sheriff's office at an unknown time as part of his grievance appeals.  He claimed the first letter was written after the last step of the grievance process, and the second was two or three weeks later.  Pierce stated that both letters related to his first grievance about the opened mail, and the Sheriff did not respond to either letter.

In addition, Pierce also claimed that he sued Sheriff Smith because the PREA line at the jail was disconnected when he tried to use it.  This PREA complaint was based on Pierce's claim that he was improperly placed in a cell with a DOC inmate who sexually assaulted him.  The inmate hung up a curtain to hide the assault, and none of the guards checked on why the curtain was there.  He stated that he tried to report the assault using the PREA line at the jail.  He said the phone tree gave the option to select four for PREA, and then it indicated that the number had been disconnected.  He stated that he complained about the phone line, but his grievance complaint was denied as duplicative.  He stated that he sued Sheriff Smith because he was the Sheriff in charge of the jail during the time of these incidents.

---

[1] The Madison Parish Detention Center is located in Tallulah, Louisiana.

Pierce further stated that Deputy Farrell was the medical transport deputy at the jail.  He sued Deputy Farrell because on two occasions, he let Porter close the office door during Pierce's mental health sessions.  During both sessions, Porter sexually assaulted him because the door was closed.  He stated that this happened after his girlfriend complained to the jail staff about Porter's sexual advances.  Pierce testified, however, that he did not tell Deputy Farrell that he had been assaulted by Porter or that he feared being assaulted.  Pierce stated that he had no conversations with Deputy Farrell about the possibility of assault if he let Porter close the door.

Pierce testified that he named Captain Weary as a defendant because she was the person he spoke with when he called the jail from his home to complaint about Porter.  Pierce explained that, while he was out of jail, Porter contacted him through Instagram and then through Facebook Messenger.  Pierce eventually gave Porter his number to reach him directly.  He testified that they engaged in sexual activity at Porter's urging.  Pierce stated that he called the jail and spoke with Captain Weary to complain that Porter was contacting him and that Porter got violent when Pierce did not comply with all of his sexual demands.  Pierce indicated that Captain Weary told him to call the Sheriff's Office because the incidents happened on the street.  Pierce called the Sheriff's Office and was told it could be reported as a domestic dispute or he could report the incidents to police in New Orleans where Porter lived.

Pierce also testified that, when he returned to jail, he heard Captain Weary's name being used in connection with security at the jail.  He stated, however, that he had no interaction with her upon his return to the jail in November 2020 or March 2021.  He stated that after he filed for a TRO in this lawsuit, Captain Weary was present when he was called to the administrative office and told to stop filing grievance complaints or he would be shipped to a DOC facility like Rayburn

Correctional Center.  Pierce stated that he eventually was shipped to a facility in Tallulah, Louisiana for a short time.  He stated that he included Captain Weary as a defendant because he did not know who to sue and she was over security administration.

Pierce also testified that, on December 7, 2020, he was in a COVID quarantine dormitory. He stated that, normally, the deputies served the food.  On this day, the deputies had an inmate serve the food to the other inmates without wearing gloves or a mask.  He stated that, when he complained, he was moved off that dormitory to a holding tank even though he could still have been sick.  He stated that the guards put him, the inmate who served the food, and a federal inmate in a holding cell for the night.  On December 8, 2020, the guards woke him up to move him to a regular dorm.  Pierce stated that he refused to go until he was tested because he did not want to spread his sickness.  Pierce stated that he then was placed on a bench called a "calm down bench." He was handcuffed to the bench and left there for three to five hours.  He testified that he told a number of deputies that he needed to use the bathroom because he had been awakened without time to use the facilities.  He was not taken and eventually urinated on himself as he sat on the bench.

Pierce testified that he told Sgt. Robin and Deputy Widdle he needed to go to the bathroom when they first put him on the bench.  He also told Lt. Fayard and Deputy Dussoy three times when they passed by together.  Lt. Fayard eventually told Pierce that Sgt. Robin told her he could not leave the bench.  Pierce stated that he told Deputy Foto and a DOC deputy multiple times as they passed through the area.  Pierce testified that at one point, he threw his food tray at the window because he did not want to eat while he sat soaked in his own urine.

9

Pierce further testified that on December 8, 2020, some of his personal items from the commissary went missing or were never delivered. He stated that he made a holiday commissary store purchase and a regular store purchase at the jail. He reported to Captain Chatelain that he had things missing from his orders. She told him that he could not have purchased the things he said were missing, like headphones, because he only spent $25. Pierced called Captain Weary about it, and she told him to call her back when he had more time to talk. He never could reach her again until he called her about Porter while he was on the street out of jail. Pierce stated that just recently, the jail gave him two packets of soups, underwear that were too large (size 2X), and bag of generic coffee as compensation for his lost items.

Pierce stated that on May 20, 2021, the disciplinary officer Deputy Lott ignored his due process rights. Specifically, Pierce claimed that Deputy Lott handled the disciplinary hearings and sentencing, but did not prepare the disciplinary write-ups. He claimed that Deputy Lott sentenced him as if he was DOC inmate instead of a pretrial inmate pending a parole revocation. Pierce claimed that, because of this, he was unable to appeal his disciplinary sentences. Pierce also claimed that when Hurricane Ida hit the area on August 28, 2021, he was in administrative segregation lockdown and stayed there for 13 days in violation of the inmate rule book. He stated that he was supposed to receive written notice as to why he was there. He acknowledged that this claim was not presented in and occurred well after he filed his § 1983 complaint.

Pierce also testified that on July 9, 2021, Sgt. Harris and Corp. Glover watched from the pod while he was assaulted by other inmates. Pierce explained that Corp. Glover told him in a grievance response that he would do something to Pierce if Pierce kept complaining about everything at the jail. On July 9, 2021, the officers moved him back onto the dorm and said they

would have Susan Johansen (the mental health advisor for the courts) come to see him. When he got on the dorm, he was approached by two inmates. One of them had taken a Bible that Pierce's mother gave him. The inmate told Pierce he was keeping the Bible, and Pierce told him no. Then, the two inmates jumped him and punched him a little. They would not let him call security. When he got up from the floor, he could see that Sgt. Harris and Corp. Glover leaving the security pod. He believes that they must have been watching the attack before they left. Pierce testified that he did not know he was going to be assaulted and had no information that Harris or Glover knew he would be assaulted. He also stated that he was seen in the medical unit after he reported the incident. The nurse had him sign papers that allowed him to go back to the dorm.

Pierce also testified that he was threatened and harassed by the jail investigators, Deputy Smith, Corp. Pellegrin, and a Sgt. John Doe, who investigated his complaints about the inmate rape and Porter incidents. He stated that these investigators interviewed him around July 2021, about a year after his return to jail. He stated that the first interview was with Detective Rachel Smith, who used harsh interrogation tactics against him. He spoke with her three times about the Porter incidents. He was taken by Corp. Pellegrin to be interviewed by the Sergeant. He spoke with the Sergeant around four times about Porter. Pierce stated that the Sergeant would harass him and threaten him with charges if his claims were not true. Pierce also told the Sergeant about his prison mail being opened, but they covered it up by looking at the wrong surveillance video. The Sergeant visited Pierce while he was on suicide watch to tell Pierce he would face charges for bringing false accusations about the alleged PREA incident with the other inmate.

Pierce testified that although he was no longer in STPJ, he expected to return there after completing his parole revocation term to bond out on the other charges so he could go home.

11

C.    **Dr. Ham's Motion to Dismiss or for Summary Judgment (ECF No. 28)**

Dr. Ham filed a motion to dismiss or alternatively for summary judgment seeking dismissal of Pierce's claims against him because Pierce failed to state a claim for which relief could be granted. ECF No. 28, at 1; ECF No. 28-1, at 4. Dr. Ham asserts that the factual allegations failed to plausibly suggest that he did anything wrong under state, federal, or constitutional law. *Id*. Dr. Ham a purported Statement of Uncontested Facts in which he summarizes allegations or facts Pierce failed to assert in his complaint and which would be necessary to state a claim against Dr. Ham. ECF No. 28-2, at 1.

Pierce filed an opposition to Dr. Ham's motion claiming that he is not educated in the law and cannot afford legal assistance. ECF No. 37, at 1. He asserts that he will be able to prove his claims verbally in open court. *Id*. He also asserts that Dr. Ham's "Statement of Uncontested Facts" uses the term "hearsay" to describe the conversation between Alexis Perry and Dr. Ham in an effort to manipulate the court. *Id*. Pierce argues that this description is contrary to the requirement that the facts be viewed in the light most favorable to the plaintiff. *Id*.

He further notes that he has no law library at his current facility. *Id*. at 2. He also contends that appointment of counsel, discovery, and access to the jail's camera footage and call logs would provide him material necessary to refute Dr. Ham's arguments and prove all of his claims. *Id*. at 1-2. He urges that this will help him prove that his mail was opened outside of his presence and that he was escorted to the Warden's office where he was threatened with retaliation by Warden Fleischman, Captain Simmons, Captain Frosche, a lieutenant over investigations, and a sergeant. *Id*. at 2-3, 4. He also notes that Captain Weary was present "but she did not make any threats." *Id*. at 4.

Pierce also refers the court to the *Spears* hearing as a basis to appoint him counsel so that defendants will not "manipulate" the court with "lies." *Id*. at 3.  He also requests that the court consider PREA laws and the rape reporting methods outlined in the jail's prisoner rule book, which allows reports to be made by the inmate's family, friends, or lawyers.  *Id*.  He contends that Perry's call to Dr. Ham constituted a report of the sexual misconduct by Porter.  *Id*.  He also contends that Dr. Ham's decision to have Pierce seen by Porter rather than someone else after the call was a violation of PREA laws.  *Id*. at 4.  He therefore asks the court to deny Dr. Ham's motion.

**D.**     **Plaintiff's Motion for Temporary Restraining Order**

Pierce filed a motion for temporary restraining order claiming that on September 21, 2021, after this suit was filed, he was called to the Warden's office at STPJ where he was met by six officers, including Warden Fleischman, Captain Weary, and the sergeant of investigations.  ECF No. 25.  He claimed that he was told to stop filing administrative grievance procedure complaints or he would be criminally charged and shipped to the B.B. "Sixty" Rayburn Correctional Center. *Id*.  He claimed that they also made clear that they could manipulate the outcome of his pending criminal charges, either for or against him.  *Id*.  He also contends that he was placed on commissary and visitation restrictions without a recent rule infraction.  *Id*.  He asserted that he would soon be eligible to bond out of jail and feared that they would intervene.  *Id*.

**II.**     **LEGAL STANDARDS**

**A.**     **Statutorily Required Screening**

As soon as practicable after docketing, the court must review a prisoner's § 1983 complaint for a cognizable claim, or dismiss the complaint if it is frivolous and/or fails to state a claim.[2]  The

---

[2] 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *Martin v. Scott*, 156 F. 3d 578, 579-80 (5th Cir. 1998).

court must dismiss an *in forma pauperis* § 1983 complaint if, upon review, it is frivolous and/or fails to state a claim.[3]  A claim is frivolous if it "lacks an arguable basis in law or fact."[4]  A claim lacks an arguable basis in law if it is "based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[5]  A factually frivolous claim alleges only facts that are "'clearly baseless,' . . . are 'fanciful,' 'fantastic,' and 'delusional' . . .  [or] rise to the level of the irrational or wholly incredible . . . ."[6]  A court may not dismiss a claim simply because the facts are "unlikely."[7]

A complaint fails to state a claim on which relief may be granted when the factual allegations do not rise above a speculative level, with the assumption that all factual allegations in the complaint are true, even if doubtful.[8]  The Rule 12(b)(6) analysis is generally confined to a review of the complaint and its proper attachments.[9]  The Fifth Circuit has summarized the standard for Rule 12(b)(6):

> "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  A claim for relief is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct."[10]

---

[3] *See, e.g..,* 28 U.S.C. § 1915(e)(2)(B); *Martin*, 156 F.3d at 579–80.

[4] *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998); *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994).  The law "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Macias v. Raul A.*, 23 F.3d 94, 97 (5th Cir. 1994) (quoting *Neitzke*, 490 U.S. at 327).

[5] *Davis*, 157 F.3d at 1005 (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

[6] *Moore v. Mabus*, 976 F.2d 268, 270 (5th Cir. 1992) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992)).

[7] *Id.*

[8] *Garrett v. Thaler*, 560 F. App'x 375, 377 (5th Cir. 2014) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[9] *Walch v. Adjutant Gen.'s Dept.*, 533 F.3d 289, 293 (5th Cir. 2008) (citation omitted).

[10] *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (quoting *Bell Atl. Corp.*, 550 U.S. at 544).

"[W]hen evaluating a motion to dismiss under Rule 12(b)(6), a court must accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff."[11]  Thus, the court should assume the veracity of all well-pleaded allegations and view them in the light most favorable to the plaintiff and then determine whether they plausibly give rise to an entitlement to relief.'"[12]

In comparing a dismissal for failure to state a claim under 28 U.S.C. § 1915(e) and Fed. R. Civ. Proc. 12(b)(6), *Neitzke*, 490 U.S. at 319, held that a claim that is dismissed under one rule does not "invariably fall afoul" of the other.[13]  If an *in forma pauperis* complaint lacks even an arguable basis in law, dismissal is appropriate under both Rule 12(b)(6) and §1915(e).[14]  "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under [§ 1915(e)'s] frivolousness standard is not."[15]

## B.    The *Spears* Hearing

The initial screening of a *pro se* prisoner's claim includes a review of the complaint and testimony from a *Spears* hearing.[16]  The purpose of a *Spears* hearing is to dig beneath the conclusory allegations of a *pro se* complaint, to ascertain exactly what the prisoner alleges

---

[11] *Id.* at 803 n.44 (quoting *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (internal quotations omitted)); *accord Murchison Capital Partners, L.P. v. Nuance Commc'ns, Inc.*, 625 F. App'x 617, 618 n.1 (5th Cir. 2015) (citing *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014)); *Maloney Gaming Mgt., L.L.C. v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (quoting *Elsensohn v. St. Tammany Par. Sheriff's Off.*, 530 F.3d 368, 371 (5th Cir. 2008) (quoting *Iqbal*, 556 U.S. at 696); *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 n.10 (5th Cir. 2017)).
[12] *Jabary v. City of Allen*, 547 F. App'x 600, 604 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 664); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).
[13] *Moore*, 976 F.2d at 269 (quoting *Neitzke*, 490 U.S. at 326) (citing 28 U.S.C. § 1915(d)) (current version at 28 U.S.C. § 1915(e)).
[14] *Id.*
[15] *Id.*
[16] *Spears*, 766 F.2d at 180 (5th Cir. 1985) (affirming magistrate court's dismissal of prisoner's claim based on complaint and evidentiary hearing).

occurred and the legal basis of the claims.[17]  "[T]he *Spears* procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners."[18]  The information elicited at such an evidentiary hearing is in the nature of an amended complaint or more definite statement under Rule 12(e).[19]  The testimony from the *Spears* hearing will supersede the allegations of the plaintiff's complaint.[20]  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."[21]

The court may make only limited credibility determinations in a *Spears* hearing, and may consider and rely on documents as additional evidence if they are properly identified, authentic and reliable.[22]  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."[23]

## C.    Temporary Restraining Orders

An injunction under FED. R. CIV. P. 65(a) "is an extraordinary remedy that is issued only when a party does not have an adequate remedy at law."[24]  The granting of an injunction is the exception, not the rule.[25]  Under FED. R. CIV. PROC. 65, a preliminary injunction may issue "only on notice to the adverse party."  For a temporary restraining order to be issued under Rule 65 without notice to all parties, a plaintiff is required to present "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will

---

[17] *Id.*

[18] *Davis*, 157 F.3d at 1005–06.

[19] *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991) (citing *Spears*, 766 F.2d at 181–82); *Adams v. Hansen*, 906 F.2d 192, 194 (5th Cir. 1990).

[20] *Riley v. Collins*, 828 F.2d 306, 307 (5th Cir. 1987).

[21] *Spears*, 766 F.2d at 182.

[22] *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 326–27 (5th Cir. 1986), *overruled on other grounds by Denton*, 504 U.S. at 25; *Wilson v. Barrientos*, 926 F.2d at 482).

[23] *Id.*

[24] *Dennis Melancon, Inc. v. City of New Orleans*, 889 F. Supp. 2d 808, 815 (E.D. La. 2012).

[25] Miss. Power & Light Co. v. United Gas Pipe Line Co., 760 F.2d 618, 621 (5th Cir. 1985).

result to [plaintiff] before the adverse party can be heard in opposition."[26]  The plaintiff also must

certify "in writing any efforts made to give notice and the reasons why it should not be required."[27]

To be eligible for temporary or preliminary injunctive relief, the movant must demonstrate

the following:

(1)    a substantial likelihood of success on the merits;

(2)    a substantial threat of irreparable injury;

(3)    the threatened injury to the movant outweighs the threatened harm to the
party sought to be enjoined; and

(4)    granting the injunctive relief will not disserve the public interest.[28]

Injunctive relief is designed to prevent future violations, not to punish a defendant for alleged past

behavior.[29]  For these reasons, "[s]peculative injury is not sufficient."[30]  Issuance of an injunction

"is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by

a clear showing, carries the burden of persuasion" as to each of the four factors.[31]  Courts may

---

[26] FED. R. CIV. PROC. 65(b)(1).

[27] *Id*.

[28] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *United Motorcoach Assocn., Inc. v. City of Austin*, 851 F.3d 489, 492-93 (5th Cir. 2017); *City of Dallas v. Delta Air Lines, Inc.*, 847 F.3d 279, 285 (5th Cir. 2017).  For preliminary injunctive relief, the plaintiff must show a likelihood of success on the merits, and for a permanent injunction, the plaintiff must normally show actual success on the merits.  *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (listing "success on the merits" as a prerequisite for obtaining a permanent injunction).

[29] *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978); *see also Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) (noting that a plaintiff must allege likelihood of future violation of their rights by defendants to pursue an injunction, not simply future effects from past violations).

[30] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear"); *Janvey v. Alguire*, 647 F.3d 585, 601 (5th Cir. 2011).

[31] *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985) (injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy); *Miss. Power & Light Co.*, 760 F.2d at 621 (an injunction is the exception, not the rule.).

issue a preliminary injunction only when the movant "clearly carried the burden of persuasion on all four requirements."[32]

In the prison setting, requests for a preliminary injunction are "viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'"[33] "Except in extreme circumstances," the "federal courts are reluctant to interfere" with matters of prison administration and management of inmates.[34] In considering a prisoner's request for prospective relief, the reviewing court "shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system" caused by the relief and shall respect the certain principles of comity where state or local law is concerned.[35] "Additionally, in accordance with the Prison Litigation Reform Act ('PLRA'), preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and be the least intrusive means necessary to correct the harm."[36] Thus, a prisoner may not obtain a preliminary injunction unless the court first finds that such relief is narrowly drawn, extends no further than necessary to correct the harm the court finds requires preliminary relief, and is the least intrusive means necessary to correct the harm.[37]

When a prisoner is no longer confined in the jail or subject to the conditions of confinement that form the basis for his complaint, a claim for injunctive relief is moot.[38]

---

[32] *Planned Parenthood of Houston & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005) (quotation omitted).

[33] *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).

[34] *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971) (affirming denial of injunction for inmate to obtain release from administrative segregation).

[35] 18 U.S.C. §§ 3626(a)(1)(B), 3626(a)(2); *Nelson v. Campbell*, 541 U.S. 637, 650 (2004).

[36] *Hood v. Vessel*, No. 13-303, 2013 WL 12121562, at *1 (M.D. La. May 14, 2013) (citing 18 U.S.C. § 3626(a)).

[37] *See* 18 U.S.C. § 3626(a)(2).

[38] *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (noting that transfer to a different prison facility mooted claims for declaratory and injunctive relief); *see also Flaming v. Alvin Community College*, 777 F. App'x 771, 772

### D.    Fed. R. Civ. Proc. 12(b)(6) Motion to Dismiss

The Supreme Court clarified the standard for a Rule 12(b) motion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative level").[39]  It is not enough to allege facts consistent with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief."[40]  If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility."[41]

Although the court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[42]  The court may consider not only the allegations but also any documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice.[43]

---

(5th Cir. 2019) (holding that claim was properly dismissed as moot "where the cause of action is no longer live") (quoting *Henschen v. City of Houston*, 959 F.2d 584, 587 (5th Cir. 1992)).

[39] *Twombly*, 550 U.S. at 555.

[40] *Id*. at 557-58; *Iqbal*, 556 U.S. at 678.

[41] *Id*. at 678.

[42] *Ferrer v. Chevron Corp.*, 484 F. 3d 776, 780 (5th Cir. 2007) (quotation omitted); *Gentilello v. Rege*, 627 F. 3d 540, 544 (5th Cir. 2010) (same) (citations omitted); *see also SGK Props., L.L.C. v. U.S. Bank Natl. Assn. for Lehman Bros. Small Balance Commercial Mortg. Pass-Through Certificates, Series 2007-3*, 881 F. 3d 933, 944–45 (5th Cir. 2018) (conclusory fraud allegations that the defendant intended plaintiff to act upon representations and plaintiff acted in reliance on representations insufficient to withstand Rule 12(b)(6) challenge).

[43] *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F. 3d 757, 763 (5th Cir. 2011) (court may consider complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice).

When an allegation is contradicted by the contents of an attached exhibit, the exhibit (not the allegation) controls.[44]

The decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court."[45]  When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.[46]  A court in its discretion may deny a motion to amend for futility if the amended complaint would fail to state a claim upon which relief could be granted.[47]

### E.    FED. R. CIV. PROC. 56 Summary Judgment Motions

Rule 56 of the Federal Rules of Civil Procedure mandates that summary judgment be issued if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[48]  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions of file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.[49]  Summary judgment is

---

[44] *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F. 3d 370, 377 (5th Cir. 2004).

[45] *Pervasive Software Inc. v. Lexware GMBH & Co.*, 688 F. 3d 214, 232 (5th Cir. 2012).

[46] *See Carroll v. Fort James Corp.*, 470 F. 3d 1171, 1175 (5th Cir. 2006) (Rule 15(a) "evinces a bias in favor of granting leave to amend"); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F. 3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").

[47] *Villarreal v. Wells Fargo Bank, N.A.*, 814 F. 3d 763, 766 (5th Cir. 2016).

[48] FED. R. CIV. PROC. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[49] *Celotex*, 477 U.S. at 323.

not precluded by disputes over facts that are not "material"[50] and disputes that are not "genuine."[51] "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[52]   All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[53]  Thus, the court must resolve factual controversies in favor of the nonmoving party "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[54]

When the moving party carries its initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[55]  If the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[56]  Summary judgment is thus proper if the party opposing the motion fails to establish an essential element of his case.[57]  Once a proper motion has

---

[50] A fact is material if its resolution could affect the outcome of the action.  *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010).

[51] A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248; *see also Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (same).

[52] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citations omitted).

[53] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075.

[54] *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

[55] *Fields v. City of New Orleans*, No. 09-4276, 2012 WL 92512, at *5 (E.D. La. Jan. 11, 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)).

[56] *Celotex*, 477 U.S. at 322-25; *see also Moody v. Jefferson Par. Sch. Bd.*, 2 F.3d 604, 606 (5th Cir. 1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1991).

[57] *See Celotex*, 477 U.S. at 322-23.

been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue of fact for trial.[58]

Only evidence—not argument, not facts in the complaint—will satisfy the burden.[59] Unsworn pleadings, memoranda or the like are not competent summary judgment evidence.[60] Summary judgment affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated therein.[61]  Statements made by affiants without personal knowledge are not capable of being presented in admissible form at trial.[62]  Summary judgment affidavits need not, however, use any magic language, provided the affiant's personal knowledge and competence are reasonably inferred from their positions and the nature of their participation in the matters to which they swore.[63]  Likewise, generalized testimony of a party's subjective belief is insufficient to create an issue for trial when the beliefs are not substantiated.[64]

---

[58] *Id.* at 321 n.3.

[59] *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 164 (5th Cir. 1991).

[60] *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991).

[61] FED. R. CIV. PROC. 56(c)(4).

[62] *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 208 (5th Cir. 2018) (citations omitted); *see also McWhirter v. AAA Life Ins. Co.*, 622 F. App'x 364, 366 (5th Cir. 2015) (holding that an affidavit based on witness' belief rather than personal knowledge is insufficient summary judgment evidence); *Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 881 (5th Cir. 2014) (summary judgment affidavit did not meet personal knowledge requirement simply because affiant stated her conclusions were based on personal knowledge.  Affiant must provide sufficient information to allow a court to conclude that affiant's assertions are based on personal knowledge); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (conclusory assertions in affidavit could not be relied upon in summary judgment proceedings).

[63] *In re Green*, 968 F.3d 516, 523-24 (5th Cir. 2020) (citations omitted) (noting personal knowledge may be inferred based on affiant's "sphere of responsibility"); *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529-30 (5th Cir. 2005) (inferring personal knowledge based on finding that testimony fell within affiant's "sphere of responsibility").

[64] *Bickerstaff v. Whitney Natl. Bank*, No. 96-30231, 1996 WL 595654, at *3 (5th Cir. Sept. 20, 1996); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152-53 (5th Cir. 1995).

Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.[65] "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.[66]

## III.    LAW AND ANALYSIS

### A.    Required Elements of a § 1983 Claim

Section 1983 creates a damages remedy for the violation of federal constitutional or statutory rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .[67]

"The purpose of § 1983 is to deter state actors from using their badge of authority to deprive individuals of federally guaranteed rights and to provide relief to victims if such deterrence fails."[68]

A plaintiff must satisfy three elements to establish § 1983 liability:

(1)    deprivation of a right secured by the U.S. Constitution or federal law;
(2)    that occurred under color of state law; and
(3)    was caused by a state actor.[69]

Because § 1983 merely provides a remedy for designated rights, rather than creating any substantive rights, "an underlying constitutional or statutory violation is a predicate to liability."[70] This requires the plaintiff to identify both the constitutional violation and the responsible person

---

[65] *See Bickerstaff*, 1996 WL 595654, at *2; *see also EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) (citation omitted) ("No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.").

[66] *Anderson*, 477 U.S. at 249-50 (citations omitted).

[67] 42 U.S.C. § 1983.

[68] *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)).

[69] *Victoria W. v. Larpenter*, 369 F. 3d 475, 482 (5th Cir. 2004) (citation omitted).

[70] *Harrington v. Harris*, 118 F. 3d 359, 365 (5th Cir. 1997) (citation omitted).

acting under color of state law.[71]  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"[72]

### 1. Conditions of Confinement Claims under § 1983

The Eighth Amendment ensures the safety and wellbeing of convicted prisoners while due process under the Fourteenth Amendment protects pretrial detainees.[73]  The proper analysis of each category of claims is the same, because "Fourteenth Amendment case law concerning pretrial detainees [is based] on the Supreme Court's Eighth Amendment precedent concerning prisoners."[74]  A claim is further classified according to whether it concerns a "condition of confinement" or an "episodic act or omission."[75]  State prisoners must be subject to humane conditions of confinement, and the conditions "must not involve the wanton and unnecessary infliction of pain."[76]  Moreover, adverse conditions of temporary and short duration rarely rise to the level of a constitutional violation.[77]

---

[71] *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978).

[72] *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *accord Thibodeaux v. Bordelon*, 740 F. 2d 329, 333 (5th Cir. 1984).

[73] *See Hare v. City of Corinth, Ms.*, 74 F.3d 633, 639 (5th Cir. 1996).

[74] *Garza v. City of Donna*, 922 F.3d 626, 634 (citing *Hare*, 74 F.3d at 643-44).

[75] *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir. 1999) (citation omitted).

[76] *Palmer v. Johnson*, 193 F.3d 346, 351-52 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  The "official conduct must be 'wanton,' which is defined to mean 'reckless.'"  *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (citation omitted).

[77] *Davis*, 157 F.3d at 1006 (inmate suffered no "extreme deprivation of any 'minimal civilized measure of life's necessities'" when he was confined in a filthy "management cell" for only three days) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) and citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (holding no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989) (Inmate who complained of "unsanitary practice[s]," including unsanitary water fountains, toilets leaking water, and unsanitized living quarters, failed to state a claim.); *Desroche v. Strain*, 507 F. Supp. 2d 571, 581 (E.D. La. 2007) ("Courts have repeatedly held 'that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions.' ") (quoting *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998)); *see also Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993) (Unsanitary conditions may rise to the level of a constitutional violation only if they result in "a serious or significant ... injury resulting from the challenged conditions."); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) (noting the intolerable conditions lasted not

To establish a conditions of confinement claim under the Eighth Amendment, Plaintiff must establish: (1) that the deprivation was sufficiently serious and (2) that the prison official possessed a sufficiently culpable state of mind.[78] Sufficiently serious act or omission must result in denial of the "minimal civilized measure of life's necessities."[79] For a failure to prevent harm claim, an inmate must show that the conditions posed a substantial risk of serious harm.[80] The second requirement, the culpable state of mind, necessitates a finding that the official(s) acted with deliberate indifference to inmate health and safety.[81] Deliberate indifference requires a showing that the defendant officials "(1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."[82]

For episodic acts or omissions claims, the court employs different standards depending on whether the liability of an individual defendant or a municipal defendant is at issue.[83] Both standards require the plaintiff to establish that the official(s) acted with subjective deliberate

---

more than 24 hours and, therefore, no constitutional violation was found); *Daigre v. Maggio*, 719 F.2d 1310, 1312-13 (5th Cir. 1983) (holding 10-day administrative lockdown that subjected prisoners to "dirty and filthy" mattresses, laundered blankets at most once a week or even up to three weeks, and no soap to wash hands with between using the toilet and eating meals was not sufficient to establish constitutional deprivation where some measure of hygiene was provided by available water and utensils at meals). *But see Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019) (holding that prisoner forced to live in two squalid cells for 6 days articulated an Eighth Amendment claim where the first cell's entire surface—floors, ceilings, windows, walls and water faucet—was covered with massive amounts of feces and emitted a strong fecal odor and second cell was extremely cold and had no water fountain, no bunk, and no toilet—only a drain in the floor that was clogged and smelled strongly of ammonia which plaintiff refused to use because it would spill onto the floor where he had to sleep), *aff'd in part and vacated on other grounds by Taylor v. Riojas*, 141 S. Ct. 52 (2020); *Quintanilla v. Araiza*, No. 20-927, 2021 WL 2019204, at *9 (W.D. Tex. May 20, 2021) (involving 3-hour deprivation of bathroom and sitting for another 1½-hours in soiled clothing).

[78] *Herman*, 238 F.3d at 664 (citing *Farmer*, 511 U.S. at 834).

[79] *Farmer*, 511 U.S. at 834.

[80] *Id.*

[81] *Herman*, 238 F.3d at 664 (citing *Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1990)).

[82] *Id.* (citing *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998)).

[83] *Id.* at 353.

indifference.[84]  Municipal as opposed to individual liability has the additional requirement that the "violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference."[85]

The Fifth Circuit has clarified the required mental state for subjective deliberate indifference: "(1) 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' and (2) 'he must also draw the inference.'"[86]  Thus, the official is liable when he ignores a danger to an inmate after he has been made fully aware of it.[87]  Subjective deliberate indifference "is an extremely high standard to meet."[88]

### B.  Supervisory Liability Claims Against Sheriff Smith and Captain Kelly

Pierce sued Sheriff Smith and Captain Kelly in their respective roles as supervisory figures at STPJ.  "Personal involvement is an essential element of a civil rights cause of action."[89]  Pierce testified that the Sheriff was in office during his incarceration and Captain Kelly was acting warden at the jail during the events involving Porter.  He stated, however, that neither official had any direct involvement in the events that occurred with Porter or the other incidents that he complains happened in the jail.  Thus, although Pierce named Sheriff Smith and Captain Kelly as defendants, he fails to allege any personal involvement by either of them in the events on which his claims are based.  Although each of these defendants may have served as a supervisor in some capacity, that fact alone is insufficient to render either of them liable for federal civil rights violations allegedly

---

[84] *Id.* (citation omitted).

[85] *Garza*, 922 F.3d at 634 (citation omitted).

[86] *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 837); *see also Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

[87] *Jackson v. Cain*, 864 F.2d 1235, 1246-47 (5th Cir. 1989).

[88] *Domino v. Tex. Dept. of Crim. Jus.*, 239 F.3d 752, 756 (5th Cir. 2001).

[89] *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.1983).

26

committed by a subordinate under strict liability or vicarious liability theories.[90]  Without allegations of personal involvement, Pierce has failed to state a claim against Sheriff Smith or Captain Kelly.

Pierce has alleged that he mailed two letters to Sheriff Smith's office as a final effort to appeal the denial of his grievance complaints related to the conditions of his confinement. However, the Fifth Circuit has repeatedly held that an inmate does not have a constitutional right to an adequate and effective grievance procedure, or to have his complaints investigated and resolved to his satisfaction:[91]  An inmate has no protected liberty interest in the adequacy or the result of prison administrative grievance procedures.[92]  Indeed, prisoners do not have a federally protected liberty interest in having grievances resolved to their satisfaction, and "an alleged § 1983 due process violation for failure to investigate grievances is indisputably meritless."[93]  Without a constitutional right at issue, Pierce's cannot state a § 1983 claim against Sheriff Smith for any alleged non-response to his grievances and related letters.

Accordingly, for the foregoing reasons, Pierce's § 1983 claims against Sheriff Smith and Captain Kelly should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[94]

---

[90] *Carter v. Strain*, No. 09-3401, 2009 WL 2390808, at *3 (E.D. La. July 31, 2009); *see Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no *respondeat superior* liability under section 1983.").

[91] *Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).

[92] *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (emphasis added).

[93] *Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. 2018) (citing *Geiger*, 404 F.3d at 374).

[94] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1); *see also* FED. R. CIV. PROC. 12(b)(6).

### C.      <u>Supervisory Liability Claims Captain Weary</u>

Pierce alleged that he named Captain Weary because he was not sure who he should sue in this case.  He also alleged that his only direct interaction with her was while he was released from jail.  He claimed that he spoke with her about his complaints that Porter was contacting him through social media and pursuing him outside of the jail.  He alleged that Captain Weary advised him to contact the police because the incidents were happening outside of the jail.  Pierce testified that he had no other interaction with Captain Weary during his incarceration in the jail in 2020 and 2021.

Further, Pierce recalled during the *Spears* hearing that Captain Weary may have been in the office when he was "threatened" by other jail officials that he would be moved out of the facility if he continued to violate the jail rules and file excessive complaints.  Pierce did not recall that Captain Weary made any threats to him and may not have spoken at all.

As outlined above, § 1983 requires that the plaintiff identify a constitutional violation by the state actor identified in his lawsuit.[95]   Pierce has not identified any violation of his constitutional rights by Captain Weary.  She simply was the officer who spoke with him on the phone when, while he was not incarcerated at the facility, he called the jail about Porter's activities outside of the jail.  In addition, even if she were present when the Warden threatened Pierce, mere threatening statements by prison officials do not violate the constitution.  "[V]erbal threats, name calling, and threatening gestures by prison guards do not amount to a constitutional violation."[96] "[T]he mere threatening language and gestures of a custodial officer do not, even if true, amount

---

[95] *Flagg Bros., Inc.*, 436 U.S. at 156.

[96] *Watson v. Winborn*, No. 02-10984, 67 F. App'x 241, 2003 WL 21108479, at *1 (5th Cir. Apr. 21, 2003) (affirming district court determination that plaintiff had no actionable claim for alleged verbal threats by prison guards) (citation omitted); *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).

to constitutional violations."[97]  Her presence when threats were made does not state a constitutional violation.

For these reasons, any § 1983 claim Pierce asserts against Captain Weary on the basis of her advice on the phone or presence during verbal threats by other officials must be dismissed under 28 U.S.C. § 1915(e)(2) and § 1915A(b) and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

### D.    Indifference Claims Against Dr. Ham

Pierce claimed that Dr. Ham did not investigate or take other action after being notified by his girlfriend that Porter made inappropriate sexual comments to him.  He contends that after the report was made and nothing was done, Porter continued to engage in sexual acts with him at the prison and pursued him after his release.

As an initial matter, Pierce has no constitutional rights to have his complaints investigated or resolved to his satisfaction.[98]  Pierce, however, did not make a formal complaint about Porter to the prison officials through the grievance system until well after Porter was no longer working at the jail and Pierce was rearrested months later.  Instead, the only immediate action Pierce took to notify the prison officials was after could not make a PREA call.  At that time, he had his girlfriend call the jail and purportedly either spoke with Dr. Ham or left him a message for him about the allegations that Porter had made suggestive or sexual comments to Pierce during a mental

---

[97] *Robinson v. Stephens*, No. 14cv701, 2017 WL 4112363, at *11 (E.D. Tex. Aug. 9. 2017) ("The use of words, no matter how violent, does not comprise a section 1983 violation." (citation omitted) (citing *Bender v. Brumley*, 1 F.3d 271, 274 n.3 (5th Cir. 1993), *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)), *report and recommendation adopted by* 2017 WL 4101676, at *1 (E.D. Tex. Sep. 14, 2017).
[98] *Bonneville*, 536 F. App'x at 503; *Propes*, 169 F. App'x at 184-85; *Geiger*, 404 F.3d at 373-74.

healthcare session at the jail.  Pierce claims that after receiving the message, Dr. Ham should have reported the allegations for the jail to further investigate into Porter's actions.

However, Pierce indicated at the *Spears* hearing that he did not actually know what Dr. Ham did after receiving the information.  He only knew that, not long after his girlfriend's call to the jail, Porter summoned Pierce to his office to talk about the accusations.  This is when Pierce struck a deal with Porter for placement in a welding class in return for his retraction of the allegations.  Porter then called Dr. Ham to his office for Pierce to do so.  Pierce testified that he told Dr. Ham that the allegations made through his girlfriend were false.  Reasonably, at that point, Dr. Ham no longer had a viable complaint of wrongful activity by Porter and there was nothing to report to jail officials for further investigation.

For these reasons, Pierce has not alleged intentional indifference by Dr. Ham towards a known risk to his safety.  As outlined previously, to establish deliberate indifference a plaintiff must show a defendant had actual knowledge of a substantial risk to inmate health or safety,[99] by demonstrating (1) the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official "must also draw the inference."[100] Dr. Ham did not act with deliberate indifference or choose to act or not act in a manner that allowed harm to come to Pierce.  Based on the facts explained by Pierce, even if Dr. Ham had been notified of the allegations about Porter, Pierce told Dr. Ham that the allegations were false.  Dr. Ham had no reason to believe a risk of harm existed once Pierce retracted his allegations.

---

[99] *Williams*, 797 F.3d at 281.
[100] *Id.* (quoting *Farmer*, 511 U.S. at 837).

To the extent Pierce contends that Dr. Ham should have done something more despite his withdrawal of the allegations, "[m]ere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm."[101]  Pierce has not alleged facts to support a claim that Dr. Ham acted intentionally to cause him harm or to allow Porter to continue his alleged wrongful acts.

Pierce, therefore, has not alleged sufficient facts to assert a claim of deliberate indifference against Dr. Ham.  His § 1983 claims against Dr. Ham should be dismissed as frivolous and/or for failure to state a claim upon which relief can be granted.[102]

### E.    Indifference Claims Against Deputy Farrell

Pierce alleged that Deputy Farrell was a medical transport officer who escorted him to meetings in Porter's office.  He claimed that on two occasions, Deputy Farrell allowed Porter to close the office door, which he believes violated a jail rule.  He also claimed that, during the closed-door meetings, Porter engaged in sexual misconduct with him.

To prevail on a § 1983 of bystander liability claim against Deputy Farrell, Pierce would have to establish that Farrell (1) knew that Porter was violating his constitutional rights; (2) was present at the scene of the constitutional violation; (3) had a reasonable opportunity to prevent the harm; and (4) chose not to act.[103]  Pierce, however, testified that he did not tell Deputy Farrell that he was afraid of Porter or that Porter had been or was going to engage in sexually inappropriate misconduct.  In other words, Deputy Farrell did not know or have reason to know Pierce was at

---

[101] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

[102] 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1); *see also* FED. R. CIV. PROC. 12(b)(6).

[103] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

risk of harm by Porter. As Pierce stated, Farrell simply walked him to Porter's office for his scheduled medical visit. Pierce has not alleged a non-frivolous claim against Deputy Farrell.

To the extent Pierce claims that Deputy Farrell should not have allowed Porter to close the door, he has not alleged more than negligence by Farrell, which is not actionable under § 1983. "[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."[104] Any failure to follow prison policy to keep the door open, assuming that to be policy, also fails to demonstrate a constitutional violation. The mere failure to follow prison's policies, procedures or regulations does not constitute deliberate indifference.[105]

Pierce therefore has not stated a non-frivolous claim against Deputy Farrell. Pierce's § 1983 claims against Deputy Farrell must be dismissed under 28 U.S.C. § 1915(e)(2), § 1915A(b), and 42 U.S.C. § 1997e, as frivolous or for failure to state a claim for which relief can be granted.

### F.    Cruel and Unusual Punishment Claims Against Porter

Pierce alleged that Porter encouraged him into a sexual relationship while he was a detainee in the jail between December 2019 and October 2020 while Porter was his mental health counselor in the medical department at the jail. He claimed the encounters occurred almost weekly during his scheduled mental health sessions and while he was held in a suicide watch cell. Pierce also indicates that after his release from jail, he was contacted by Porter through social media and the two men rekindled a volatile, sexual relationship. While the constitution offers no protection to Pierce for his apparently voluntary sexual encounters with Porter outside of the jail, there is notable

---

[104] *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).
[105] *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996).

concern for the relationship purportedly prompted and pursued by Porter within the jail while Porter was on the medical staff.

The Fifth Circuit has long held that, "isolated, unwanted touchings by prison employees, though 'despicable and, if true, they may potentially be the basis of state tort actions . . . they do not involve a harm of federal constitutional proportions as defined by the Supreme Court.'"[106]  A prison official's sexual assaults against an inmate, however, even with no lasting physical injury, "may be actionable under the Eighth Amendment as acts which are offensive to human dignity."[107] The Eighth Amendment guarantees the right to be free from "cruel and unusual punishments" while in custody, and sexual assault is recognized as both cruel and unusual punishment and excessive force.[108]

Based upon the facts in the complaint, as supplemented at the *Spears* hearing, Porter influenced if not "forced" Pierce into repeated sexual activity, from oral sex to voyeurism, by using his position and influence as a mental health counselor at the jail.  At this preliminary stage of the proceeding, Pierce has stated a non-frivolous claim of possible cruel and unusual punishment or excessive force by Porter for the sexual encounters that occurred within the jail between December 2019 and October 2020, especially if the encounters were not consensual.[109]  The claims against Porter should be retained and allowed to proceed for further review.

---

[106] *Copeland v. Nunan*, 250 F.3d 743, 2001 WL 274738, at *3 (5th Cir. 2001).

[107] *Copeland*, 2001 WL 274738, at *2.

[108] *Whitley v. Albers*, 475 U.S. 312, 318 (1986); *Bearchild v. Cobban*, 947 F.3d 1130 (9th Cir. 2020).

[109] *See Olivarez v. GEO Group, Inc.*, 844 F.3d 200, 205 (5th Cir. 2016) (holding that recordings of § 1983 plaintiff's phone calls from prison had substantive value because they tended to establish that the inmate plaintiff had "initiated consensual sex" with the defendant correctional employee, a defense defendants had raised); *see also Ashley v. Perry*, No. 13-00354, 2015 WL 9008501, at *3 n.6 (M.D. La. Dec. 15, 2015) ("Consensual sex between consenting adults does not give rise to an Eighth Amendment violation simply because it occurs within the walls of a prison." (quotation omitted)).

### G.    Cruel and Unusual Punishment Claims Against Sgt. Robin, Dep. Widdle, Lt. Fayard, Dep. Dussoy, Dep. Foto

In his complaint, Pierce alleged that on December 8, 2020, officers at the jail handcuffed him to a bench and left him there for hours, soaked in his own urine.  At the *Spears* hearing, Pierce testified that he understood why he was placed on the bench, and is really only complaining that he was left there without being taken to the bathroom which caused him to urinate on himself.  He stated that he made requests to go to the restroom to Sergeant Robin and Deputy Widdle, when he was first put on the bench, and later to Lieutenant Fayard, Deputy Dussoy, and Deputy Foto as they walked past him on the bench at various times.  He claimed that his requests were either ignored or denied because Sergeant Robin instructed that he not be moved from the bench.

As discussed above, the Eighth Amendment prohibits cruel and unusual punishment.[110] "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[111]  Prison officials are required to provide humane conditions of confinement and ensure that inmates receive adequate food, water, clothing, shelter, and medical care.[112]  Prison officials' wanton and deliberate indifference to these basic human needs violates the Eighth Amendment.[113]

---

[110] U.S. CONST. amend. VIII.

[111] *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (quoting *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995) (alterations omitted)).

[112] *Farmer*, 511 U.S. at 832; *Flores v. TDCJ Transitorial Planning Dept.*, No. 14-CV-283, 2015 WL 10436114, at *2 (S.D. Tex. Nov. 17, 2015).

[113] *Farmer*, 511 U.S. at 834, 837.

The continued refusal to provide an inmate necessary access to a bathroom for a significant period of time may rise to the level of a constitutional deprivation,[114] but a single or temporary deprivation of toilet access does not generally give rise to an actionable constitutional claim.[115] Further, the inmate still must show that the denial of access involved indifference to a substantial risk of serious harm to his health or safety.[116]  For example, in *Vacca v. Scott*, 119 F. App'x 678 (5th Cir. 2005), the Fifth Circuit considered the repeated denial of an inmate's request for access to a bathroom which resulted in the inmate soiling himself and his clothing.  The court found no constitutional violation or claim stated under § 1983 because the inmate did not allege an actual "risk to his present and future health."[117]

---

[114] *Taylor v. Stevens,* 946 F.3d 211, 223 (5th Cir. 2019) (holding that inmate stated claim for Eighth Amendment violation based on allegations of being denied access to bathroom f or 24 hours), *cert. granted, judgment vacated sub nom. Taylor v. Riojas*, 141 S. Ct. 52, 208 L. Ed. 2d 164 (2020); *Hope v. Pelzer*, 536 U.S. 730 (2002) (recognizing that that tying plaintiff to a hitching post without a shirt in the sun for 7 hours without water and bathroom breaks while taunting him was a violation of the Eighth Amendment); *Quintanilla v. Araiza*, No. 20-927, 2021 WL 2019204, at *9 (W.D. Tex. May 20, 2021) (involving 3-hour deprivation of bathroom and sitting for another 1½-hours after soiling himself) (citing *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020)).

[115] *Tyree v. Brooks*, 2009 WL 2232455, at *2 (W.D. Va. July 24, 2009) (holding that denial of bathroom privileges for just over five hours while being transported between prisons is not a denial of a minimal measure of life's necessities."); *Smith v. Boyd*, 2012 WL 3230646, at *9 (M.D. Ala. July 5, 2012) (holding the Eighth Amendment not violated when an inmate was denied access to restroom for several hours while a search was being conducted, inasmuch as no injury was suffered); *Rouse v. Caruso*, 2011 WL 918327, at *12 (E.D. Mich. Feb. 18, 2011) (court found that denial of bathroom privileges for six to eight hours did not violate Eighth Amendment); *Hernandez v. Battaglia*, 673 F. Supp. 2d 673, 677 (N.D. Ill. 2009) (denial of bathroom break during three to five hour period of cell shakedown did not state Eighth Amendment claim); *Owens v. Padilla*, 2008 WL 3916068, at *4 (N.D. Cal. Aug. 22, 2008) (confinement in prison barbershop for six hours without access to bathroom did not state Eighth Amendment claim); *Trevino v. Jones*, 2007 WL 710213, at *8 (N.D. Okla. Mar.6, 2007) (use of restrooms only twice during eight-hour period does not constitute cruel and unusual punishment);

[116] *Farmer*, 511 U.S. at 837.

[117] *Vacca*, 119 F. App'x at 678; *see Mendoza v. Atwell*, No. 20-cv-42, 2020 WL 8514099, at *4 (S.D. Tex. Sep. 21, 2020) (defendant's actions were reprehensible in denying plaintiff access to the restroom, which resulted in plaintiff soiling himself, but plaintiff failed to allege an Eighth Amendment violation in the single incident where there were no allegations of physical injury); *Gonzalez v. Davis*, No. 18cv574, 2020 WL 5225674, at *3 (E.D. Tex. Jun. 11, 2020) (inmate failed to state a constitutional claim based on allegations that prison officer denied him access to a restroom on one occasion which forced inmate to defecate on a shirt); *Decker v. Dumbar*, 633 F. Supp. 2d 317, 341-42 (E.D. Tex. 2008) (inmate that urinated on himself after being denied access to a restroom while count was completed did not suffer more than de minimis physical injury).  *Accord Harold v. Tangipahoa Par. Sheriff Off.*, No. 20-2220, 2021 WL 2920513, at *13 (E.D. La. Jun. 18, 2021) (acknowledging that prisoner's claim that he lacked a toilet for three days in a room with another inmate, causing feces and urine to accumulate due to inadequate facilities, stated a sufficient constitutional claim, but dismissal was warranted due to the lack of a constitutionally significant injury),

In this case, while the conduct at issue may be reprehensible, Pierce describes only a single incident and does not allege that the temporary denial of access to the bathroom or exposure to his own urine caused him any physical harm or risk to his health. Instead, he alleged that the three-hour incident was at most embarrassing and aggravating. This generalized claim of discomfort and emotional upset is probably not severe enough or sufficient to state an Eighth Amendment violation.[118] Even if it were sufficient, however, Pierce has failed to indicate that he suffered physical injury or that the defendants acted with intentional indifference to a risk of a serious physical injury, as required under *Farmer*.[119]

Further, a claim for emotional and mental suffering is barred by 42 U.S.C. § 1997e(e), which provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . ." As Pierce does not allege that he suffered any physical injury related to the temporary denial of access to the bathroom and instead seeks compensatory monetary relief for trauma, humiliation, and mental anguish, his failure to allege physical injury operates to bar any claim for compensatory monetary damages for his alleged emotional injury.

---

*R.&R. adopted by* 2021 WL 2911926, at *1 (E.D. La. Jul. 12, 2021); *Quintanilla v. Araiza*, No. 20-927, 2021 WL 2019204, at *9 (W.D. Tex. May 20, 2021) ("Accordingly, the Court finds the general constitutional rule that an inmate should not be made to endure degrading situations, such as being denied access to a toilet for so long that he is forced to soil himself and unnecessarily sit in his waste for hours, applies "with obvious clarity" to [defendant's] conduct in this case.") (citing *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020)).

[118] *See Vacca*, 119 F. App'x at 678 (citing *Wilson v. Lynaugh*, 878 F.2d at 849); *see also Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (pain and discomfort for which an inmate seeks no medical treatment is *de minimis* and insufficient to support an Eighth Amendment claim). *But see Quintanilla v. Araiza*, No. 20-927, 2021 WL 2019204, at *9 (W.D. Tex. May 20, 2021) (holding that general constitutional rule that an inmate should not be made to endure degrading situations, such as being denied access to a toilet for so long that he is forced to soil himself and unnecessarily sit in his waste for hours, applies to prison who soiled himself after denied bathroom access for 3 hours and was then forced to sit in his own waste for another 1½ hours).

[119] *Herman*, 238 F.3d at 664 (citing *Farmer*, 511 U.S. at 834).

For these reasons, Pierce has failed to state a non-frivolous claim arising from the denial of access to a bathroom while he was handcuffed to the bench. His § 1983 claim should be dismissed under 28 U.S.C. § 1915(e)(2), § 1915A(b), and 42 U.S.C. § 1997e, as frivolous or for failure to state a claim for which relief can be granted.

### H.    Due Process Claims Against Deputy Lott

At the *Spears* hearing, Pierce amended his complaint to allege that Deputy Lott, a disciplinary hearing officer at the jail, denied him due process during the disciplinary process when the Deputy used the wrong disciplinary rules to charge and sentence him like a DOC inmate rather than a pretrial detainee. When he complained, he was still sentenced to a one man cell for 13 days before being returned to a regular cell.

Initially, the Fifth Circuit has held that allegations that a prison official has failed adequately to follow particular prison rules, regulations or procedures cannot support a § 1983 claim without an independent constitutional violation.[120] The Constitution requires no particular process during disciplinary proceedings at a prison, nor is review under § 1983 available, unless something more than a mere change in condition of confinement occurs.[121] Although the States may create liberty interests, "these interests will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[122] Thus, the Supreme Court has held that due process does not require

---

[120] *McFaul v. Valenzuela*, 684 F.3d 564, 579 (5th Cir. 2012) (citing *Dist. Attorney's Offc. v. Osborne*, 557 U.S. 52, 67 (2009); *Jackson*, 864 F.2d at 1251-52; *Neuwirth v. La. State Bd. of Dentistry*, 845 F.2d 553, 557 (5th Cir. 1988)); *Patel v. Haro*, 470 F. App'x 240, 244 (5th Cir. 2012); *Stanley v. Foster*, 464 F.3d 565 (5th Cir. 2006); *see also*, *Richardson v. Thornton*, 299 F. App'x 461, 463 (5th Cir. 2008) ("The failure of the prison to follow its own policies, including a failure to address prisoner grievances, is not sufficient to make out a civil rights claim.") (citing *Myers*, 97 F.3d at 94).

[121] *Sandin*, 515 U.S. at 484; *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

[122] *Sandin*, 515 U.S. at 484.

that a prisoner be afforded the full panoply of procedural protections in disciplinary proceedings when the disciplinary sentence or other restrictions do not inevitably effect the duration of his incarceration or sentence.[123] "The Due Process Clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner."[124]

For example, a prisoner's temporary placement in a restricted cell or loss of other privileges as punishment for disciplinary violations are "merely changes in the conditions of his confinement and do not implicate due process concerns."[125] These restrictions do not represent the type of atypical, significant deprivation in which a state might create a liberty interest that would require due process protections.[126] Examples of prison hardships that would qualify as atypical and significant include unwanted administration of anti-psychotic drugs, involuntary commitment to a mental hospital, and extension of the prisoner's sentence for his underlying criminal conviction.[127]

In Pierce's case, there is no independent constitutional violation arising from his prison disciplinary proceedings. Further, he has not alleged any such "atypical, significant deprivation" that might rise to the level of constitutional concerns to warrant review of his disciplinary proceedings at the jail.[128] Instead, Pierce's discipline and placement in a disciplinary cell after he

---

[123] *Id.*, at 481-83 (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974), and *Hewitt v. Helms*, 459 U.S. 460 (1983)).

[124] *Madison*, 104 F.3d at 767.

[125] *Id.* at 768; *accord Hernandez v. Velasquez*, 522 F.3d 566, 563 (5th Cir. 2008); *Dixon v. Hastings*, 117 F. App'x 371, 372 (5th Cir. 2005); *Milch v. Thayer*, 211 F.3d 953, 957-58 (5th Cir. 2000).

[126] *Hernandez*, 522 F.3d at 563; *Madison*, 104 F.3d at 768.

[127] *Sandin*, 515 U.S. at 484; *see Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005) (addressing solitary confinement in a "Supermax" facility imposed an atypical and significant hardship to a protected liberty interest based on the existence of extenuating circumstances, including disqualification of an otherwise eligible inmate from parole consideration).

[128] *See Lander v. Lamartiniere*, 515 F. App'x 257, 259 (5th Cir. 2013) (loss of canteen privileges and transfers to different cellblocks did not implicate liberty interest that required due process); *Johnson v. Livingston*, 360 F. App'x 531, 532 (5th Cir. 2010) (citing *Milch*, 211 F.3d at 958) ("Loss of privileges and cell restriction do not implicate due process concerns."); *Hernandez*, 522 F.3d at 563 (distinguishing the "extreme conditions" described in *Wilkinson* and holding that non-disciplinary "confinement to a shared cell for twelve months with permission to leave only for showers, medical appointments and family visits . . . is by no means an atypical prison experience"); *Payne v. Dretke*,

38

was charged with rule infractions, even if he disagreed with the procedural rules followed by the deputy, did not implicate a constitutionally protected liberty interest.[129]  "[A]bsent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will *never* be a ground for a constitutional claim" because it "simply does not constitute a deprivation of a constitutionally cognizable liberty interest."[130]  Even in the pre-trial detainee context, the Fifth Circuit accords "the widest possible deference" to prison officials in classifying inmates as necessary "'to maintain security and preserve internal order.'"[131]

In addition, to whatever extent, if any, that Pierce claims disparate disciplinary treatment between him and other pretrial detainees might constitute a violation of his Equal Protection Clause rights, he fails to state a non-frivolous claim.  "To state an equal protection claim, [plaintiff] must allege, inter alia, that similarly situated individuals have been treated differently and he must also allege purposeful or intentional discrimination" relating to a particular class.[132]  "A prisoner must show that the prison official acted with a discriminatory purpose and thus cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination.  Vague and conclusory allegations [of discrimination] are insufficient to raise an equal protection claim."[133]  Pierce has proffered no allegations that Deputy Lott discriminated against him based

---

80 F. App'x 314, 2003 WL 22367564, at *1 (5th Cir. 2003) ("commissary and recreation restrictions [as disciplinary punishment] . . . do not implicate a liberty interest under the Due Process Clause").

[129] *See Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (". . . administrative segregation, without more, does not constitute a deprivation of a constitutionally cognizable liberty interest.").

[130] (emphasis added) *Pichardo v. Kinker*, 73 F.3d 612, 612-613 (5th Cir. 1996).

[131] *Perez v. Anderson*, 350 F. App'x 959, 962 (5th Cir. 2009) (quoting *Hernandez*, 522 F.3d at 561).

[132] *McKnight v. Eason*, 227 F. App'x 356, 357 (5th Cir. 2007) (citation omitted) (emphasis added); *accord Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007).

[133] *Jebril v. Joslin*, No. 07-436, 2008 WL 416240, at *8 (S.D. Tex. Feb. 12, 2008) (citing *Woods*, 51 F.3d at 580); *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992); *Pedraza v. Meyer*, 919 F.2d 317, 318 n.1 (5th Cir. 1990)); *accord Jones v. Castro*, No. 6-CA-846, 2007 WL 3396500, at *4-5 (W.D. Tex. Nov. 13, 2007) (citing *Al-Ra'id v. Ingle*, 69 F.3d 28, 32 (5th Cir. 1995)).

on any prohibited class.  Pierce cited nothing sufficient to establish any equal protection or other constitutional claim relating to disciplinary charges.

Because Pierce does not allege that the disciplinary proceedings resulted in discrimination or the imposition of any "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," his claim is frivolous and otherwise fails to state a claim for which relief can be granted.  His § 1983 claim against Deputy Lott should be dismissed under 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

**I.**  **Failure to Protect Claims Against Sgt. Harris and Corp. Glover**

During the *Spears* hearing, Pierce explained that on July 9, 2021, he was escorted back to his tier by Sgt. Harris and Corp. Glover, and that the officers were still in the security pod when he was punched by two inmates, one of whom had taken Pierce's Bible.  Pierce stated that he had no known enemies on that tier and did not report any concerns to the officials when he was moved to that tier.  He indicated that he had no reason to believe he would be attacked when he returned to his cell.

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners."[134]  To establish a violation of this right, a prisoner must show (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) the prison official acted with "deliberate indifference to inmate health and safety."[135] This is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action .

---

[134] *Williams*, 797 F.3d at 280 (quoting *Farmer*, 511 U.S. at 833).

[135] *Id*. at 280 (quoting *Farmer*, 511 U.S. at 834).

. . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."[136]

Only deliberate indifference, "an unnecessary and wanton infliction of pain or acts repugnant to the conscience of mankind," constitute conduct proscribed by the Eighth Amendment.[137]  To establish deliberate indifference a plaintiff must show a defendant had actual knowledge of a substantial risk to inmate health or safety,[138] by demonstrating (1) the prison official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) the official "must also draw the inference."[139]  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to cause harm."[140]  If the court finds that one of the components of the test is not met, it need not address the other component.[141]

Pierce has not stated a claim of failure to protect against Sgt. Harris and Corp. Glover. Pierce stated that there was no indication that he would be attacked nor had he reported any concerns or fears to the officials.  The incident was spontaneous and occurred when he learned the inmate would not return his Bible.  Thus, there was no known substantial risk or any inference to have been drawn by the officers.  Pierce stated that he had no concerns about being on the tier and had reported no further problems with these inmates that he reported to the prison officials,

---

[136] *Southard v. Tex. Bd. of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)) (additional citations and footnote omitted) (emphasis added).  "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." *Norton*, 122 F.3d at 291; accord *Williams*, 797 F.3d at 281.

[137] *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); accord *Gregg v. Georgia*, 428 U.S. 153, 182–83 (1976).

[138] *Williams*, 797 F.3d at 281.

[139] *Id*. (quoting *Farmer*, 511 U.S. at 837).

[140] *Mace*, 333 F.3d at 626.

[141] *Davis*, 157 F.3d at 1005.

although his Bible was taken again.  He has not alleged that these officers unconstitutionally exposed him to a substantial risk of serious harm with any deliberate indifference.

Pierce's testimony, even accepted as true in its entirety, does not rise to the level of deliberate indifference by Sgt. Harris or Corp. Glover.  His claims against these officers is frivolous and otherwise fails to state a claim for which relief can be granted and should be dismissed under 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

### J.    Claims of Harsh Words and Threats Against Corp. Pelligrin and Deputy Smith

During the *Spears* hearing, Pierce testified that after he returned to jail in 2021, he filed grievance complaints at the prison related to his alleged rape at the hands of another DOC inmate. In July 2021, the complaints were investigated by Corp. Pellegrin, Deputy Smith, and a sergeant Pierce called "John Doe."  Pierce stated that during the officers' investigation and questioning of him over the course of several interviews, the officers, especially the unknown Sergeant, used harsh words and interrogation tactics and threats of criminal charges if it was determined that Pierce was lying about the incident.

As discussed previously, an inmate does not have a constitutional right to an effective grievance procedure or to have his complaints investigated to his satisfaction or a manner he would prefer.[142]  In addition, harsh language and even verbal threats do not amount to a constitutional violation.[143]

---

[142] *Bonneville*, 536 F. App'x at 503; *Propes*, 169 F. App'x at 184-85; *Geiger*, 404 F.3d at 373-74.
[143] *Watson*, 2003 WL 21108479, at *1; *Calhoun*, 312 F.3d at 733.

For these reasons, Pierce has not stated a § 1983 claim arising from the investigation of his complaints or the use of harsh words by the investigating officers.  His claims should be dismissed under 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

### K.   Missing Commissary Items

Pierce also testified at the *Spears* Hearing that he made a "holiday" and regular commissary purchase orders part of which either went missing or were not received from the commissary on December 8, 2020.  At one point in his testimony, Pierce claimed that deputies took his items while he was being moved or on handcuffed to the bench on December 8, 2020.  He later testified that the items that were missing were not included in the bag when he received his orders.  In either case, the loss of property is not actionable under § 1983 for the following reasons.

When a deprivation of property is caused by an act of negligence or intentionally, due process and the Constitution simply are not implicated.[144]  The United States Supreme Court has made clear that when a state actor deprives a person of his property, whether the act was unauthorized or intentional, there is no due process violation if state law provides an adequate post-deprivation remedy.[145]  The law in this circuit is well settled that Louisiana law clearly provides an inmate with an adequate post-deprivation remedy through its expansive tort laws.[146]

The Constitution is not implicated regardless of whether Pierce's items were taken or he was deprived of his ordered items, or the funds he used to pay for them, through negligence or an

---

[144] *Daniels*, 474 U.S. at 330-31 ("[T]he Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property.").

[145] *See Hudson v. Palmer*, 468 U.S. 517 (1984) (intentional deprivations); *Parratt v. Taylor*, 451 U.S. 527 (1981) (unauthorized deprivations).

[146] *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984); *Bennett v. La. Dept. of Pub. Safety and Corrs.*, 61 F. App'x 919, 2003 WL 1109690, at *1 (5th Cir. 2003); *Arnold v. Inmate Accounts*, 48 F. App'x 105, 2002 WL 31017153, at *1 (5th Cir. 2002).

intentional act of the commissary personnel.  In neither instance can Pierce state a claim under § 1983 for deprivation of property.[147]  His claim is frivolous and otherwise fails to state a claim for which relief can be granted.  His claims should be dismissed under 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.

## L.   **Pierce's Motion for Temporary Restraining Order is Moot**

On October 1, 2021, Pierce filed a motion for temporary restraining order claiming that on September 21, 2021, Warden Fleischman and a sergeant from investigations, possibly accompanied by Capt. Weary, ordered him to stop filing grievance complaints or he would be criminally charged and shipped to a DOC facility.  ECF No. 25.  He also asserted that the Warden threatened to manipulate his on-going criminal proceedings.  *Id*.  At the *Spears* hearing, Pierce testified that while he was temporarily moved to a DOC facility, it was after Hurricane Ida, and he was soon returned to the STPJ where he was housed at the time of the hearing.

As an initial matter, Pierce notified the Court on March 14, 2022, that he is no longer in prison by providing his current civilian address.  ECF No. 39.  The United States Fifth Circuit Court of Appeals has consistently held that a prisoner's requests for injunctive relief related to the conditions of his confinement are rendered moot by his transfer or release.[148]  Pierce is not entitled to the injunctive relief he requests since he is no longer in STPJ.

Pierce also has not alleged or established irreparable injury warranting injunctive relief.  A plaintiff has generally experienced irreparable harm "if the injury cannot be undone through

---

[147] *Geiger*, 404 F.3d at 374; *Stauffer v. Gearhart*, 741 F.3d 574, 583 (5th Cir. 2014) (". . . when an inmate's property is taken without compensation, his remedy is in state court, not federal court.").

[148] *See Herman*, 238 F.3d at 665; *Lodge v. Tigner*, 772 F. App'x 87, 87 (5th Cir. 2019); *Smith v. City of Tupelo*, 281 F. App'x 279, 282 (5th Cir. 2008); *see also Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("A matter is moot when it is impossible for a court to grant any effectual relief whatever to the prevailing party." (internal quotation marks omitted)).

monetary remedies."[149]  Pierce presented no indication that he suffered any injury, much less injury that cannot be monetarily compensated, arising from the verbal threats or his temporary move to another prison after Hurricane Ida.  Stress, concern, and discomfort is not irreparable for purposes of awarding injunctive relief.[150]  Furthermore, the court is also by this report recommending that Pierce's claims of threats and abusive language be dismissed as frivolous.  His ineffective grievance process allegations also fail to state a § 1983 claim.  He therefore has failed to establish a likelihood of success on the merits of his claims against these officers to entitle him to injunctive relief.

For these reasons, Pierce has not entitled to injunctive relief and otherwise has not met the burden necessary for the court to issue temporary injunctive relief under FED. R. CIV. PROC. 65. He also has not provided grounds for this court to intervene in the normal operations of the jail, as required for injunctive relief under the PLRA.  His motion should be denied.

### M.    Defendants' Motion to Dismiss or for Summary Judgment is Moot

For the reasons provided previously in this Report, Pierce's claims against Dr. Ham are frivolous and otherwise for failure to state a claim for which relief can be granted under § 1983. Dr. Ham's motion, filed before the Court could complete its statutorily required frivolousness review, is rendered moot by the findings and recommendations in this Report.  Dr. Ham's motion should be denied without prejudice for this reason.

---

[149] *Enter. Intl., Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985) (citation and internal quotes omitted).
[150] *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008).

## RECOMMENDATION

It is therefore **RECOMMENDED** that Wesley D. Pierce's § 1983 claims against defendants Dr. Jose Ham, Captain Lacey Kelly, Sheriff Randy Smith, Deputy Warren Farrell, Captain Shaniqueka Weary, Lt. Chatelain, Deputy Johnathan Lott, Sgt. Robin, Deputy Widdle, Lt. Fayard, Deputy Dussoy, Deputy Foto, Sergeant Harris, Corporal Glover, Deputy Racheal Smith, Corporal Pelligrin, and Sergeant John Doe be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

It is further **RECOMMENDED** that Pierce's Motion for Temporary Restraining Order (ECF No. 25) be **DENIED**.

It is further **RECOMMENDED** that Dr. Ham's Motion to Dismiss/for Summary Judgment (ECF No. 28) be **DENIED AS MOOT**.

It is further **RECOMMENDED** that Pierce's § 1983 claims of excessive force and cruel and unusual punishment against defendant Jonathan Porter arising from the alleged sexual assaults occurring within the St. Tammany Parish Jail between December 2019 and October 2020 be allowed to proceed and remain referred to the undersigned Magistrate Judge for further pretrial proceedings.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[151]

New Orleans, Louisiana, this ___6th___ day of June, 2022.


DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[151] *Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).

47